UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

MICHAEL TOLENTINO, *et al*,          §
                                     §
          Plaintiffs,                §
VS.                                  §          CIVIL ACTION NO. C-09-326
                                     §
C & J SPEC-RENT SERVICES INC; aka C  §
& J ENERGY SERVICES, INC.,           §
                                     §
          Defendant.                 §

## ORDER

On this day came on to be considered Plaintiffs' Opposed Motion for Notice to

Potential Class Members (the "Motion").  (D.E. 21.)  For the reasons stated herein,

Plaintiffs' Motion is GRANTED IN PART AND DENIED IN PART.

**I.      Jurisdiction**

This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 (federal question) as Plaintiffs bring suit pursuant to the Fair Labor Standards Act,

29 U.S.C. §§ 201 et seq. ("FLSA").

**II.     Factual and Procedural Background**

Plaintiff Michael Tolentino filed this action on November 23, 2009 against C & J

Energy Services, Inc.  (D.E. 1.)  Plaintiff filed a First Amended Complaint (D.E. 10) on

January 14, 2010 naming his actual former employer C & J Spec-Rent Services, Inc. ("C

& J" or "Defendant"), as the proper Defendant.[1]   On February 9, 2010, Plaintiff

---

[1] C & J is an oilfield service company that provides services to oil and gas industry customers in Texas, Louisiana, and Oklahoma.  (D.E. 24 at 3.)  Among other services, C & J performs coil tubing services, which involves the use of high-strength coil tubing to either drill a new oil or gas well, or perform maintenance work on an existing well.  (D.E. 24-1 at 2.)

Tolentino, now joined by Plaintiffs Juan Pacheco and Javier Garcia, filed a Second Amended Complaint.  (D.E. 19.)

Plaintiffs allege that they and other similarly situated present and former C & J employees at Defendant's Robstown and Marshall, Texas locations were improperly classified as "exempt" employees, and thus denied overtime pay in violation of the FLSA.  Based on the nature of their employment, job duties, and responsibilities, they were or are presently blue-collar workers, without managerial or supervisory duties and responsibilities.  (D.E. 19 at 2-3.)  Plaintiff Tolentino was employed by Defendant from October 2005 to February 2009, first as a pump operator and coil tubing operator, then as a supervisor, although he states that his duties remained much the same as when he was an operator. (D.E. 19 at 3.)  Tolentino states that he was paid a fixed salary, and regularly worked more than 96 hours per week, yet never received overtime pay for time worked in excess of 40 hours per week. (D.E. 19 at 3.)   Plaintiff Pacheco was employed by Defendant from August 2006 to March 2007, and from August 2007 to August 2008, as a "pump operator."  He alleges that he was paid a fixed salary but regularly worked more than 100 hours a week, sometimes 24 hours straight, and never received overtime pay. (D.E. 19 at 3-4.)  Plaintiff Garcia was employed by Defendant from January 2006 to November 2007, and from May 2008 to November 2008, as an "operator."  Like Pacheco, he claims that he regularly worked more than 100 hours a week, sometimes 24 hours straight, but did not receive overtime pay.  Garcia states that he began being paid hourly shortly before November 2008.  (D.E. 19 at 3-4.)

Plaintiffs allege that Defendant violated Section 207(a) of the FLSA by failing to pay Plaintiffs and other employees proper overtime wages of not less than one and one-

half times the regular rate for any work in excess of forty hours per week. 29 U.S.C. § 207(a)(1).[2]  Plaintiffs also allege that Defendant's actions were neither reasonable nor taken in good faith, and therefore Plaintiffs and putative class members are entitled to unpaid wages and overtime compensation under the FLSA and all other liquidated damages.  (D.E. 19 at 5-6.)

Plaintiffs allege that there exists a putative class of present or former employees at Defendant's Robstown and Marshall locations who were paid a fixed salary but regularly worked in excess of 40 hours per week, and were not paid overtime wages.  They further allege that these putative class members were similarly situated to Plaintiffs, since "they all shared the same or substantially similar job duties."  (D.E. 19 at 4.)  Further, they claim that the failure to pay overtime wages was a result of "generally applicable policies and practices," and did not "depend on the personal circumstances of the Plaintiffs and the Putative Class Members."  (D.E. 19 at 4-5.)  Despite somewhat differing job responsibilities, all employees were entitled to proper overtime pay, Plaintiffs argue. (D.E. 19 at 5.)

On March 4, 2010, Plaintiffs filed the Motion presently before the Court.  (D.E. 21.)  Plaintiffs claim that there are "many former and existing employees" of Defendant who have worked in excess of one hundred hours per week but were not paid overtime wages.  Plaintiffs seek to organize a collective action under 29 U.S.C. § 216, and

---

[2] Section 207(a)(1) provides:

(1) Except as otherwise provided in this section, no employer shall employ any of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce, for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C § 207(a)(1).

therefore request that this Court order Defendant to disclose current and former employees' contact information and permit Plaintiffs to issue notice of this lawsuit to potential class members.  (D.E. 21 at 22.)  Defendant filed a Response on April 23, 2010. (D.E. 24.)  Plaintiffs thereafter filed a Reply (D.E. 28), and Defendant filed a Surreply (D.E. 30).

## III.   Discussion

### A.   Collective Action General Principles

The FLSA requires covered employers to pay non-exempt employees for hours they have worked in excess of defined maximum hours. 29 U.S.C. § 207(a). It also creates a cause of action for employees against employers who have violated the overtime compensation requirements:

> An action . . . may be maintained . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). "A representative action brought pursuant to this provision follows an 'opt-in' rather than an 'opt-out' procedure." Ali v. Sugarland Petroleum, 2009 WL 5173508, at *1 (S.D. Tex. Dec. 22, 2009).  District courts have discretion in deciding whether and how to award "timely, accurate, and informative" notice to prospective plaintiffs.  Hoffman La-Roche Inc. v. Sperling, 493 U.S. 165, 172 (1989).  FLSA collective actions "are generally favored because such actions reduce litigation costs for the individual plaintiffs and create judicial efficiency by resolving in one proceeding common issues of law and fact arising from the same alleged . . . activity."  Yaklin v. W-

H Energy Servs., Inc., 2008 WL 1989795, at *1 (S.D. Tex. May 2, 2008) (citing Hoffmann-La Roche Inc., 493 U.S. at 170).

Courts presently follow two different approaches in determining whether to authorize notice to employees of their right to join a collective action suit under FLSA Section 216(b). Ali, 2009 WL 5173508, at *2. The first approach was developed in Lusardi v. Xerox Corp., 118 F.R.D. 351 (D. N.J. 1987), and involves a two-step process to determine whether employees are similarly situated. See Mooney v. Aramco Servs. Co., 54 F.3d 1207, 1213-14 (5th Cir.1995), overruled on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90, 90-91 (2003)). The second approach follows Shushan v. University of Colorado, 132 F.R.D. 263 (D. Colo. 1990), and treats the collective action authorization as coextensive with Rule 23 class certification. See Villatoro v. Kim Son Rest., 286 F. Supp. 2d 807, 809 (S.D. Tex. 2003). The Fifth Circuit has not yet "ruled on how district courts should determine whether plaintiffs are sufficiently 'similarly situated' to advance their claims together in a single § 216(b) action." Acevedo v. Allsup's Convenience Stores Inc., __ F.3d __, 2010 WL 908678, at *1 (5th Cir. Mar. 15, 2010). Despite this uncertainty, courts in this District follow the Lusardi approach rather than the Shushan approach. See, e.g., Ali, 2009 WL 5173508, at *2; Maynor v. Dow Chem. Co., 2008 WL 2220394, at *4 (S.D. Tex. 2008); Villatoro, 286 F. Supp. 2d at 810. This is consistent with the Fifth Circuit's conclusion in LaChapelle v. Owens-Illinois, Inc. that "[t]here is a fundamental, irreconcilable difference between the class action described by [Federal Rule of Civil Procedure] 23 and that provided for by FLSA § 16(b) [29 U.S.C. § 216(b)]," namely the "opt out" procedure for class members under Rule 23 as contrasted with the "opt in" procedure under Section 216(b). 513 F.2d 286, 288 (5th

Cir. 1975); see also Donovan v. Univ. of Tex. at El Paso, 643 F.2d 1201, 1206 (5th Cir. 1981) ("The statutory framework of enforcement procedures of the FLSA and those of Title VII are crucially different, but this difference highlights even more why Rule 23 is not needed in FLSA suits. The FLSA procedure, in effect, constitutes a congressionally developed alternative to the F. R. Civ. P. 23 procedures."). The Fifth Circuit recently referred to the two step approach as the "typical[]" manner in which collective actions proceed. Sandoz v. Cingular Wireless LLC, 553 F.3d 913, 915 n.2 (5th Cir. 2008). This Court therefore applies the Lusardi approach.

The first step of the analysis is the "notice stage." During the notice stage, the court "makes a decision – usually based only on the pleadings and any affidavits which have been submitted – whether notice of the action should be given to potential class members. Because the court has minimal evidence, this determination is made using a fairly lenient standard and typically results in 'conditional certification' of a representative class. If the district court 'conditionally certifies' the class, putative class members are given notice and the opportunity to 'opt-in.'" Mooney, 54 F.3d at 1214; Ali, 2009 WL 5173508, at *2 (citing Mooney). At this stage, courts generally "require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy, or plan infected by discrimination." 54 F.3d at 1214 n.8. As one court has explained, "[a] factual basis for the allegations must be presented, and there must be a showing of some identifiable facts or legal nexus that binds the claims so that hearing the cases together promotes judicial efficiency. A plaintiff must do more than show the mere existence of other similarly situated persons, because there is no guarantee that those persons will actually seek to join in the lawsuit."

Ali, 2009 WL 5173508, at *2 (internal quotation marks and citations omitted); see also Vargas v. Richardson Trident Co., 2010 WL 730155, at *7 (S.D. Tex. Feb. 22, 2010). Generally, a plaintiff must show that: "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit." Morales v. Thang Hung Corp., 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009). This standard is "less stringent" than the Rule 23 class action requirements. Cantu v. Vitol, Inc., 2009 WL 5195918, at *3 (S.D. Tex. Dec. 21, 2009).

A court may deny conditional certification and notice "if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice. However, the court need not find uniformity in each and every aspect of employment to determine [that] a class of employees is similarly situated. The remedial nature of the FLSA and § 216 militate strongly in favor of allowing cases to proceed collectively." Albanil v. Coast 2 Coast, Inc., 2008 WL 4937565, at *3 (S.D. Tex. Nov. 17, 2008) (internal quotation marks and citations omitted). If the court conditionally certifies the class during the notice stage, the action "proceeds as a representative action throughout discovery." 54 F.3d at 1214.

Lusardi's second step is triggered when a defendant files a motion for decertification, after completion of discovery. Id. "At this stage, the court has much more information on which to base its decision, and makes a factual determination on the similarly situated question. If the claimants are similarly situated, the district court allows the representative action to proceed to trial. If the claimants are not similarly

situated, the district court decertifies the class, and the opt-in plaintiffs are dismissed without prejudice.  The class representatives – i.e. the original plaintiffs – proceed to trial on their individual claims."  Id.; Ali, 2009 WL 5173508, at *3 (citing Mooney).

Notification to prospective claimants issues when a court conditionally certifies the case as a collective action suit under Section 216(b), and the court "may exercise its discretion in defining the class of plaintiffs who will receive notice and how they will be notified."  Ali, 2009 WL 5173508, at *3.

This case is currently at the first step of Lusardi, the notice stage, and the Court proceeds with this analysis, below.

### B.    Conditional Certification

#### 1.    Arguments

Plaintiffs propose to represent a class defined as follows: "[a]ll persons employed by Defendant in Operator or Supervisor positions at Defendant's Robstown, Texas, and Marshall, Texas facilities between November 21, 2006 and the present."  (D.E. 19 at 5.) Plaintiffs argue that there are "many former and existing employees of C & J who have performed labor for C & J, who worked more than 100 hours per week, and who were paid no overtime wages."  (D.E. 21 at 2.)  The named Plaintiffs attach and incorporate by reference their three declarations, all supporting the allegations.  (D.E. 21 at 4-12.)  Each declaration provides details as to specific aspects of the former employees' functions and responsibilities.  First, declarants state that they worked as pump operators or coil tubing operators in the field, which was "difficult, manual labor," and did not work in an office. None had supervisory responsibilities, even though Plaintiff Tolentino states that his job title was coil tubing "supervisor" from December 2006 to January 2009. (D.E. 21 at 4-5,

7-8, 9-10.)    Second, they state that they often had to work in excess of 100 hours per week, more than 21 days in a row, and more than 24 hours straight without rest.  They were given only two days off per month.  Each claims that they never received overtime pay, and only sometimes received a "job bonus" ranging from $75 to $225.  Each claims to have personal knowledge that all field employees were paid fixed salaries regardless of hours work and did not receive overtime wages.  (D.E. 21 at 5-6, 8, 10-11.)    Third, declarants state that there was high turnover at the job, with employees remaining only three months before quitting due to the long hours they were required to work.  They state that "every job we performed in the field was substantially the same as all other jobs," that "the only difference at each job was the depth of the well," and that "there is no significant difference at all in the nature of the work performed by all operators in Robstown and operators in Marshall."  They estimate that between November 2006 and November 2009, there were a total of approximately 250 existing and former employees who worked in the field between the Robstown and Marshall offices.  (D.E. 21 at 6, 8-9, 11.)  Finally, each declarant states that he had no discretion in the performance of his job, did not exercise independent judgment, followed established policies, and was required to call a field supervisor to resolve any problems.  None made employment decisions or shaped business policies.  (D.E. 21 at 7, 9, 11-12.)  Tolentino states that the same was true for all other coil tubing supervisors.  (D.E. 21 at 7.)

Plaintiffs also argue that Defendant failed to cooperate with written discovery, filing "boiler-plate objections" to most questions, including those about the number of Defendant's employees who were classified as exempt, and the contact information for those employees.  Defendant stated that it would not provide this information unless the

Court grants conditional collective action status.  This concealment, according to Plaintiff, justifies granting its Motion.  (D.E. 21 at 2-3; D.E. 21-4.)

Based on the foregoing, Plaintiffs (1) request the contact information for present and former operators and coil tubing supervisors employed by C & J between November 22, 2006 and the present, (2) request permission to send notice to these individuals regarding the existence of the lawsuit and their right to opt-in, and (3) request that C & J provide this information in a usable electronic format within 20 days after entry of this Order.  (D.E. 21 at 21.)

In response, Defendant provides several reasons why conditional certification should not be granted.  First, Defendant argues that Plaintiffs have failed to demonstrate that they are "similarly situated" to each other or to members of the proposed class; the evidence in fact indicates the contrary.  Second, Defendant argues that Plaintiffs have not presented evidence that any alleged aggrieved individuals wish to opt into this lawsuit. They do not submit affidavits to this effect, nor do they even allege that other aggrieved individuals wish to opt into the lawsuit.  (D.E. 24 at 19.)  Third, Defendant argues that Plaintiffs' proposed class is overbroad, both in terms of types of employees and class period.  (D.E. 24 at 20-22.)  If class certification is granted, Defendant argues that the proposed notice is invalid, as it should not direct potential opt-in plaintiffs to contact Plaintiffs' counsel or send their consent forms to Plaintiffs' counsel, nor should it contain information regarding eligibility to join the lawsuit.  (D.E. 24 at 22-23.)

### 2.    Analysis

The Court must determine whether Plaintiffs have satisfied its burden to demonstrate that conditional class certification is proper.  In the notice stage, a court will

customarily make a decision "based only on the pleadings and any affidavits which have been submitted." Mooney, 54 F.3d at 1213-14. To facilitate the analysis, the Court will evaluate the request for conditional certification in light of the three factors discussed above. Morales, 2009 WL 2524601, at *2; Aguirre v. SBC Comm., Inc., 2006 WL 964554, at *5 (S.D. Tex. Apr. 11, 2006).

### a. Is there a Reasonable Basis for Crediting the Asserting that Aggrieved Individuals Exist?

In this case, Plaintiffs have stated a cognizable claim under Section 207 of the FLSA, and each Plaintiff has provided a declaration that describes Defendant's alleged actions. Plaintiffs' declarations also state that there are hundreds of other existing and former employees who performed the same tasks and whom Defendant allegedly treated in the same manner. Each provides detailed allegations regarding Defendant's alleged failure to properly pay overtime wages. (D.E. 21-1 at 4 ("I have personal knowledge that all employees of the defendant who worked in the field as operators were paid fixed salaries, regardless of the number of hours worked, and were never paid any overtime wages for [hours] worked in excess of 40 per week, at least through the end of 2008."); D.E. 21-2 at 3; D.E. 21-3 at 3). Affidavits such as these "are ideal for analysis of whether 'the putative class members were together the victims of a single decision, policy, or plan.'" Morales, 2009 WL 2524601, at *3. Affidavits show that a defendant implemented the same policy with respect to different employees, and that "additional plaintiffs wish to join [the] collective action suit." Ali, 2009 WL 5173508, at *5. In light of these statements, the Court concludes that Plaintiffs have shown that it is reasonable to believe that there are other aggrieved employees. See, e.g., Prater v. Commerce Equities

Management Co., Inc., 2007 WL 4146714, at *5 (S.D. Tex. Nov. 19, 2007) (reviewing allegations and affidavits in assessing first factor).

> **b.     Are there Aggrieved Individuals who are Similarly Situated to Plaintiffs?**

The potential class plaintiffs are considered "similarly situated" to the named plaintiffs if they are "'similarly situated' with respect to their job requirements and with regard to their pay provisions. The positions need not be identical, but similar. A court may deny a plaintiff's right to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." Yaklin, 2008 WL 1989795, at *2 (internal citations omitted).

Here, Plaintiffs have presented their three declarations in support of their Motion. Mr. Pacheco states in his declaration that he worked numerous overtime hours, but was paid a fixed salary.  (D.E. 21-2 at 3.)  He also states that "each coil tubing job in the field . . . [has] a crane operator, a coil unit operator, a fluid pump operator, a nitrogen pump operator, and a transport driver.  I have performed all rig up and rig down operators." (D.E. 21-2 at 2.)  In addition, each employee on the team "performed the same job functions in the [field]; that is crane operator, coil unit operator, fluid pump operator, nitrogen pump operator, and transport driver.  Further, it was very common for each operator to perform the functions of another operator, depending on the job and availability of employees.  Every job we performed in the field was substantially the same as all other jobs.  Generally, the only difference at each job was the depth of the well."  (D.E. 21-2 at 3-4.)  Pacheco states that he worked primarily in Robstown, but had "been to the office in Marshall, Texas as well."  (D.E. 21-2 at 2.)   Mr. Garcia's declaration is very similar to Mr. Pacheco's, though he also states that he was employed

at the Marshall facility for a period of time.  (D.E. 21-3.)   Mr. Tolentino's declaration provides some additional information.  He states that he began work as a "pump operator," then was asked to be a "coil tubing operator," and finally in December 2006 was named "coil tubing supervisor."   As a "supervisor," Tolentino states that he "was given the additional responsibility of communicating with the representative of the company which owned the rig that required service, upon arrival," and worked with "5-6 other workers."  (D.E. 21-1 at 2.)  He states, however, that "more than 75% of [his] time was spent performing difficult, manual labor," that he "never worked in an office," and had no other supervisory responsibilities (such as discretionary functions, hiring and firing decisions, or input into management of the business).  (D.E. 21-1 at 3, 5-6.)

    As noted above, Defendant has several objections to Plaintiffs' evidence.  First, Defendant argues that Plaintiffs have failed to demonstrate that they are "similarly situated" to each other or to members of the proposed class.  Plaintiff Tolentino was a "supervisor," and therefore properly considered an "exempt" employee by Defendant pursuant to the "executive exemption," 29 U.S.C. § 213(a)(1), whereas Pacheco and Garcia were "operators" and therefore not considered "exempt."  Tolentino's claim thus relates to whether he was properly classified as "exempt," while Pacheco and Garcia's claims do not involve this issue.  Defendant contends that no case has included in the same class in a collective action both employees properly classified as exempt and employees classified as non-exempt.  (D.E. 24 at 11-13.)  Defendant further argues that Plaintiff Tolentino is not a proper class representative because he has an inherent conflict of interest in representing his subordinates.  As a supervisor, Tolentino was responsible for tracking the hours of the members of his coil tubing crew, including fluid pump

operators and coil unit operators, and thus could potentially be liable for failing to adequately report the hours of these workers.  (D.E. 24 at 17-18.)

In their Reply, Plaintiffs contend that Tolentino's supervisor or "executive" exemption does not make him dissimilarly situated because his primary duty was not management, as is required for the exemption to apply.  Rather, Tolentino performs the same manual labor in the field as the other Plaintiffs, and is properly classified as a "blue-collar" worker.  While Tolentino may not be identically situated to the other Plaintiffs, he is "similarly situated," and that is all the statute requires.  (D.E. 28 at 1-7.)

The Court agrees with Defendant with respect to Tolentino.  Although Tolentino essentially alleges that he was a "supervisor" in name only, his job functions appear to be sufficiently dissimilar from those of Pacheco and Garcia to warrant the conclusion that he is not "similarly situated."  For example, Tolentino states that as a supervisor, he was "given the additional responsibility of communicating with the representative of the company which owned the rig that required service, upon arrival," that he would "decide where to place our equipment to begin work," and would substitute in for workers who were "taking a break."  (D.E. 21-1 at 2.)  The Affidavit of Mike Thorn, submitted by Defendant, portrays Tolentino as having even more supervisory responsibilities, including "the authority and discretion to make hiring, firing, promotion, and other change of status recommendations, [which] received serious weight by C & J's upper management."  (D.E. 24-1 at 4.)[3]  Thorn also states that Tolentino was responsible for "tracking the hours of the members of his coil tubing crew."  (Id.)  Due to Plaintiff Tolentino's additional responsibilities, his status as an "exempt" employee would likely

---

[3] Contrary to Plaintiffs' arguments (D.E. 28 at 5-6), the Affidavits of Mike Thorn and Rachel Armont were sworn before a notary.  These are thus proper affidavits.  See, e.g., DIRECTV, Inc. v. Budden, 420 F.3d 521, 529-30 (5th Cir. 2005).

involve a different analysis than that presented with respect to non-supervisory employees. In light of these considerations, the Court concludes that Tolentino may proceed as an individual Plaintiff, but not on behalf of a similarly situated class composed of non-supervisor employees. See Yaklin, 2008 WL 1989795, at *3 ("[T]he affidavit of Samuel Rojas, the lone Service Supervisor, expressly shows that Rojas is *not* similarly situated to the other named Plaintiffs in terms of his job responsibilities. . . . [T]he affidavit sets forth Rojas's job responsibilities and payment provisions alone, and fails to discuss the job responsibilities and payment provisions of his allegedly similarly situated peers.") (emphasis in original).

In addition to differences between Plaintiffs, Defendant also asserts that Plaintiffs Pacheco and Garcia cannot demonstrate that C & J employees with jobs other than fluid pump operators or coil unit operators had similar duties or responsibilities. They have produced no affidavits or statements from any other employees with other job titles to demonstrate that those employees' duties and responsibilities were similar to their own. (D.E. 24 at 16, 19-21.)

The Court disagrees on this point. Mr. Pacheco and Mr. Garcia's declaration is based upon personal knowledge of the work performed by each operator. They state that all workers "performed the same job functions in the [field]," and "it was very common for each operator to perform the functions of another operator, depending on the job and availability of employees." (D.E. 21-2 at 3-4; D.E. 21-3 at 3-4.) These statements demonstrate that employees performed similar job functions, even if they had different titles. Slight differences in job duties or functions do not run afoul of the similarly situated requirement. See Dreyer v. Baker Hughes Oilfield Operations, Inc., 2008 WL

5204149, at *2 (S.D. Tex. Dec. 11, 2008) ("[I]f the job duties among potential members of the class vary **significantly**, then class certification should not be granted.") (emphasis in original); Johnson v. Big Lots Stores, Inc., 2007 WL 5200224, at *9 (E.D. La. Aug. 21, 2007) ("The Court recognizes that there are some differences between plaintiffs' employment experiences as assistant managers. But the terms of the FLSA's collective action provision allow for differences. To pursue claims against an employer, plaintiffs must be **similarly situated**.  They do not have to be **identically situated**.") (emphasis in original).  Moreover, even if the actual jobs performed by other "operators" differed in certain respects, it is not apparent that these differences would be relevant, or that the jobs are so dissimilar as to warrant denying collective action at this time.  At this "fairly lenient" notice stage of the proceedings, Plaintiffs' statements suffice as evidence that other employees are "similarly situated."  Mooney, 54 F.3d at 1214; Johnson v. TGF Precision Haircutters, Inc., 319 F. Supp. 2d 753, 754-55 (S.D. Tex. 2004) ("The standard applied is a lenient one . . . .").

Plaintiffs have failed, however, to demonstrate that employees in C & J divisions other than the coil tubing division are similarly situated.  Defendant argues that employees at C & J's other divisions, primarily the "fracturing" division, are not similarly situated to the coil tubing workers, because the work performed in the fracturing division requires different equipment and a different composition of work crews.[4]  The fracturing division also has a different upper management and operational management structure than does the coil tubing division, according to Defendant.  (D.E. 24 at 16-17;

---

[4] According to the Affidavit of Mike Thorn, Operations Manager at C & J, "fracturing" involves injecting an oil or gas well with pressurized fluid to "fracture" the formation surrounding a well and increase the amount of exposure the well has to that formation, so that the well can reach more oil and gas.  (D.E. 24-1 at 3.)  In contrast, coil tubing services involves the use of high-strength coil tubing to either drill a new oil or gas well, or perform maintenance on an existing well.  (D.E. 24-1 at 2.)

D.E. 24-1 at 3.)  Plaintiffs appear to have worked only on coil tubing crews.  In fact, Plaintiffs state that "90-95 % of all work performed by defendant in the field was coil tubing."  (D.E. 21-1 at 3; D.E. 21-2 at 2; D.E. 21-3 at 2.)  Plaintiffs have failed to provide any evidence that C & J employees in other divisions are similarly situated to those in the coil tubing division.  As such, the prospective class may only include non-supervisory employees in C & J's coil tubing division.[5]

The Court thus concludes that the prospective class may only include non-supervisory employees in the coil tubing division at Defendant's Robstown and Marshall, Texas facilities.

### c.    Do Similarly Situated Aggrieved Individuals Want to Opt in to the Lawsuit?

Defendant contends that Plaintiffs have not satisfied their burden with respect to this third factor, as they have not presented evidence other than their own declarations that any alleged aggrieved individuals wish to opt into this lawsuit.  (D.E. 24 at 19.) Defendant argues that, as Plaintiffs have failed to meet their burden to provide even a minimal showing that other individuals exist who want to opt-in to the lawsuit, conditional certification should be denied on that basis alone.  (D.E. 24 at 20.)

In Yaklin, this Court found that affidavits submitted by eight of the named plaintiffs were sufficient to meet the lenient notice standard for conditional certification. 2008 WL 1989795, at *2.  Other courts have allowed for class certification without the

---

[5] The Court also notes that Plaintiffs have provided only minimal evidence with respect to similarly situated individuals at the Marshall, Texas facility, as only Plaintiff Garcia worked at both offices for any length of time.  (D.E. 21-3 at 1-2.)  Defendant has not, however, specifically objected to the inclusion of employees at the Marshall, Texas location.  The Court will allow the collective action definition to include both the Robstown and Marshall locations at this time.

submission of affidavits from similarly situated employees, or affidavits from named

Plaintiffs that provide specific information about other employees.  One court explained:

> While this would help make the initial determination of a collective action easier, the Court does not believe that it is required where the Complaint sufficiently addresses a collective action. Plaintiff's Complaint is likely at the outer bounds of what should be presented to the Court when initiating a collective action-which should normally contain some evidence, such as affidavits from other employees, that there are similarly situated plaintiffs. However, the Court finds that Plaintiff's Complaint sufficiently states a claim against Defendant as to all nonexempt, hourly paid EMTs who were allegedly required to perform their regular services without compensation and who were not paid compensation for on-call time when they were required to receive payment. The Court finds no disadvantage to either side in conditionally certifying this case as a collective action.

Neagley v. Atascosa County EMS, 2005 WL 354085, at *3 (W.D. Tex. Jan. 7, 2005); see

also Hayes v. Laroy Thomas, Inc., 2006 WL 1004991, at *6 (E.D. Tex. Apr. 18, 2006)

("Plaintiffs have not presented affidavits from potential plaintiffs. However, the Court

finds Plaintiffs have made a preliminary factual showing that a similarly situated group of

potential plaintiffs exist.").[6]

    In this case, Plaintiffs have submitted two declarations of similarly situated

individuals (not including Plaintiff Tolentino's declaration), and have filed a Complaint

that sufficiently states a claim against Defendant as to current and former employees who

were allegedly denied overtime pay for excess hours.  Although the evidence presented

here is minimal, the Court determines that Plaintiffs have satisfied their burden at this

stage of the proceedings to demonstrate the existence of other similarly situated

---

[6] In contrast, other courts have found one or more affidavits insufficient to certify a collective action.  One court stated, "[o]ne affidavit is not enough to establish that the collective action, along with the expensive notice it requires, is the most efficient way to proceed with litigation."  Morales, 2009 WL 2524601 at *3; see also Ali, 2009 WL 5173508, at *5 (one affidavit is insufficient); Songer v. Dillon Resources, Inc., 569 F. Supp. 2d 703, 707 (N.D. Tex. 2008) (finding "virtually identical" affidavits from five named plaintiffs insufficient).

employees who wish to opt in to the lawsuit.  Should other similarly situated employees eventually be found not to exist, this issue may be raised at the decertification stage.

### d.      Is the Proposed Class Improperly Overbroad?

Defendant contends that Plaintiffs' proposed class is overly broad, as it includes employees with different job duties and responsibilities, different statuses under the FLSA, and will necessarily advance different theories of liability and recovery.  If class certification is granted, Defendant contends that the class should be limited only to those employees who worked for C & J as fluid pump operators or coil unit operators on coil tubing crews, should be limited in time to three years before the date the class notification is approved by the Court, and should terminate in October 2008, when C & J restructured its payment structure for fluid pump operators and coil unit operators.  After October 2008, these employees were paid an hourly rate plus overtime; as such, all fluid pump operators or coil unit operators hired after October 2008 should not be included in the class.   (D.E. 24 at 20-22, 25-26.)   Plaintiffs argue in response that continuing the limitation period up to the present date is valid because the evidence shows that Defendant continues to violate the FLSA "with respect to job titled 'supervisors' through the present date." (D.E. 28 at 6.)

First, the Court has already concluded that the collective action may include all non-supervisory operators in Defendant's coil tubing division at the Robstown and Marshall facilities during the relevant class period.  (See supra Part III.B.2.b.)  Turning now to the class period, Defendant is correct that class certification is appropriately limited to workers employed by Defendant up to three years before this Court approves the notice.  An FLSA cause of action "may be commenced within two years after the

cause of action accrued . . . except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued." 29 U.S.C. § 255(a). Importantly, the "limitations period is **not tolled** with respect to other potential plaintiffs unless and until they opt in to the case." Quintanilla v. A & R Demolitina, Inc., 2005 WL 2095104, at *16 (S.D. Tex. Aug. 30, 2005) (emphasis added). "Based on the statute of limitations, courts have recognized that class certification is appropriately limited to workers employed by the defendant up to three years before notice is approved by the court." Id.; Watson v. Travis Software Corp., 2008 WL 5068806, at *8 (S.D. Tex. Nov. 21, 2008) (limiting the class period in the case to "three years before the issuance of notice is approved"). Thus, the notice period must commence three years prior to the Court's approval of this notice.

The Court also agrees that the class period must end in October 2008, in light of its earlier conclusion that the class must be limited to non-supervisory employees. As a basis for Defendant's proposed October 2008 termination date, Defendant provides an affidavit from C & J Human Resources Manager Rachel Armont, which states that "[t]he pay structure for operators was restructured in October 2008, and from that point forward employees in operator positions have been paid on an hourly basis and receive overtime compensation based on their hourly rate for all hours worked over forty in a given work week." (D.E. 24-2 at 2.) Plaintiffs do not dispute that a policy shift occurred in October 2008. Rather, they state only that C & J continues to violate the FLSA with respect to "supervisors through the present date." (D.E. 28 at 6.) Plaintiff Garcia admits that C & J "began paying employees who worked in the field as operators an hourly wage starting in

about October 2008," and Plaintiff Pacheco states that he "began being paid by the hour sometime shortly before his resignation in November 2008." (D.E. 19 at 4.)

The October 2008 policy change demonstrates that those employed by Defendant after October 2008 are not "similarly situated" to those employed before that time, as they are not together "victims of a single decision, policy, or plan," regardless of whether FLSA violations continued to occur after that time. Mooney, 54 F.3d at 1214 n.8.

In sum, the appropriate class period is from three years prior to the date that notice is approved by this Court to October 31, 2008.[7]

**C.    Notice**

Having concluded that a notice of collective action is appropriate in this case, the next consideration is whether Plaintiffs' proposed notice is proper. Defendant objects to Plaintiffs' proposed notice on the following bases: (1) the notice directs potential class members to contact Plaintiffs' counsel, (2) the notice directs potential opt-in plaintiffs to send their notice forms directly to Plaintiff's counsel, (3) the notice includes language that is unnecessary to inform prospective opt-in plaintiffs of their potential right to opt-in to the collective action and goes to the merits of the claims, and (4) the class period should be limited to three years prior to the date notice is issued to October 2008. (D.E. 24 at 26-27.)[8]    Plaintiffs respond that the proposed notice is proper, as it is common practice to request that potential opt-in plaintiffs send notice to Plaintiffs' counsel to avoid delays. (D.E. 28 at 6.)

---

[7] In the absence of a more specific date provided by the parties, the Court selects the final day of October 2008 as the termination date for the class period.
[8] The proposed notice also contains a reference to an individual named "Yaklin." The Court understands this to be an inadvertent error and directs that the revised notice contain no reference to this individual.

The Court agrees with Defendant on the first two objections.  First, the notice must inform potential class Plaintiffs that they may contact any attorney of their choosing to discuss the case.  <u>Yaklin</u>, 2008 WL 1989795, at *4; <u>Moran v. Ceiling Fans Direct, Inc.</u>, 2006 WL 2868939, at *2 (S.D. Tex. Oct. 5, 2006).  Second, class members who wish to opt-in must return their opt-in forms directly to the Court, not to counsel for Plaintiff.  <u>Yaklin</u>, 2008 WL 1989795, at *4.

With respect to the third objection, the Court finds that the language in the proposed notice serves to inform prospective class members of their ability to join the lawsuit.  The Court, however, will allow the notice to contain a brief explanation of Defendant's bases for disputing liability.  <u>Id.</u>  Finally, as the Court has discussed above, the class period shall commence three years prior to the date notice is issued to prospective class members, and will terminate on October 31, 2008.

As the Court has concluded that notice to potential class members shall be issued with the limitations described above, the Court also orders that Defendant produce to Plaintiffs in a usable electronic format no later than 14 days from entry of this Order, the names, addresses, phone numbers, and e-mail addresses of all persons employed by Defendant in "operator" positions in the coil tubing division at Defendant's Robstown and Marshall, Texas facilities between three years prior to May 26, 2010 and October 31, 2008.

## IV.    Conclusion

For the reasons discussed above, Plaintiffs' Motion for Notice to Potential Class Members (D.E. 21) is hereby GRANTED IN PART:

(1)  Defendant is ORDERED to produce to Plaintiffs, no later than 14 days from entry of this Order, the names, addresses, phone numbers, and e-mail addresses of all persons employed by Defendant in "operator" positions in the coil tubing division at Defendant's Robstown and Marshall, Texas facilities between three years prior to May 26, 2010 and October 31, 2008. The contact information must be in a usable electronic form.

(2)  The parties are ORDERED to jointly submit to the Court, no later than 14 days from entry of this Order, a proposed notice to potential class members, revised in accordance with all aspects of this Court's order; and

(3)  Defendant may move to decertify the class no later than August 16, 2010, the dispositive motion deadline.  (D.E. 15.)

SIGNED and ORDERED this 26th day of May, 2010.

Janis Graham Jack
United States District Judge