## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL TOLENTINO, JUAN PACHECO, JAVIER GARCIA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, | § § § § § § | |
| Plaintiffs, | § § | |
| | § | **Civil Action No.  2:09-cv-326** |
| VS. | § § | **JURY TRIAL DEMANDED** |
| C & J SPEC-RENT SERVICES, INC., | § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. 216(b)** |
| Defendant. | § | |

### JOINT MOTION FOR APPROVAL OF SETTLEMENT

TO THE HONORABLE UNITED STATES DISTRICT COURT:

The parties in this action have agreed to a fair and reasonable settlement of the claims asserted.  The plaintiffs and the defendant hereby submit this joint motion requesting that the Court enter an order approving the settlement reached and dismissing the plaintiffs' claims with prejudice in accordance with the terms of the settlement agreement.

### INTRODUCTION

1.  The plaintiffs and the defendant have entered into an agreement to settle all of the claims in this matter for alleged unpaid overtime, court costs, and attorneys' fees.

2.  This suit was filed by the plaintiffs alleging that the defendant, C & J Spec-Rent Services, Inc., did not pay overtime compensation to the plaintiffs in accordance

with the Fair Labor Standards Act (FLSA).  The defendant has denied that it violated any provisions of the FLSA.

3.  The plaintiffs are former employees of the defendant.  During the relevant time period, the defendant's office was located in Robstown, Texas.  The defendant is in the business of providing coil tubing services to oil and gas companies.

4.  Coil tubing services are needed at well locations in the field to unplug wells.  A coil tube is driven into the well hole, together with chemicals and/or nitrogen to clear the plugged area of the well.  Typically, a team of four or more employees travel to a well site in the field to perform these services.  Plaintiff Tolentino was employed as a "coil tubing supervisor."   The remaining plaintiffs were employed as "operators" for the defendant.  In the suit, the plaintiffs allege that they worked an average of more than 85 hours per week for the defendant.  The defendant has denied that the plaintiffs worked an average of more than 85 hours per week.  During their employment for the defendant, each of the plaintiffs were treated as exempt from the overtime provisions of the FLSA and were paid a fixed salary.  During the relevant time period, the plaintiffs were not paid overtime compensation for hours worked, if any, that were in excess of 40 in any one week.

5.  The plaintiffs and the defendant have been preparing for trial of this suit.  The parties have identified approximately 20 potential trial witnesses who would be called as witnesses at trial or could be presented to the jury by deposition testimony.  Because of the number of witnesses and the issues involved in trying the case, the parties have now estimated that a trial would likely last several days to a week and require substantial

efforts to coordinate witnesses for presentation to the jury.

6. Further, the defendant has filed a motion for partial summary judgment, with respect to Plaintiff Tolentino and with respect to Department of Transportation ("DOT") logs providing conclusive evidence of the number of hours worked each week by the plaintiffs, which the defendant contends is an average of approximately 50 hours per week. The plaintiffs filed a response to the motion for partial summary judgment. The motion remains pending. In its motion, the defendant contends that Plaintiff Tolentino is exempt from receipt of overtime pay under the executive and highly compensated employees exemptions to the provisions of the FLSA. See 29 C.F.R. § 541.100 and 29 C.F.R § 541.601. The plaintiffs strongly oppose the application of the exemptions to Plaintiff Tolentino. The defendant also contends in its motion that the hours of work recorded by the plaintiffs themselves in each employee's DOT log establishes conclusively the number of hours the plaintiffs worked each week, which is far below the hours claimed by plaintiffs. On the other hand, the plaintiffs contend that they worked an average of 85 hours per week. Their allegations in this respect would be presented to a jury by oral testimony from each of the plaintiffs and by comparison of "field tickets" to the DOT logs. The parties, while each confident in their respective positions are, obviously, unsure how the Court would rule on the defendant's pending motion. The ruling could substantially impact the value of the case from a damages standpoint. Further, as in any FLSA case, the parties in this case believe that resolving these issues at trial would be complicated, cumbersome, and perhaps confusing to a jury hearing it for the first time.

7.   The parties previously mediated this case with Marvin Nebrat, unsuccessfully, and then mediated the case a second time with Marvin Nebrat on September 27, 2010. The second mediation was successful, and the parties reached an agreement in principle to settle the litigation.  *See Settlement Agreement, attached hereto as Exhibit A.*  As shown below, the terms of the settlement are fair to all parties involved and should be approved by the Court.

## THE COURT SHOULD APPROVE THE PARTIES' SETTLEMENT

### A.   Legal Standard

8.   The provisions of the FLSA are mandatory and generally are not subject to waiver or modification by settlement, unless reviewed and approved by a court.  See, e.g., *Dail v. Arab, Inc.*, 391 F. Supp. 2d 1142, 1145 (M.D. Fla. 2005).  The standard for approval of the settlement of a collective action is for a court to determine whether the settlement is fair, reasonable, and adequate.  *Murillo v. Texas A&M Univ. System*, 921 F. Supp. 443, 445 (S.D. Tex, 1996); *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977). Where a settlement in an FLSA case reflects a reasonable compromise over issues in dispute, a court should approve settlement in order to promote the policy of encouraging settlement of litigation.  *See Dail*, 391 F. Supp. 2d at 1145 (*citing Lynn's Food Stores, Inc. v. U.S.*, 679 F.2d 1350, 1354-55 (11th Cir. 1982)).

9.   There is a strong presumption in favor of finding a settlement fair.  *See Cotton*, 559 F.2d at 1330-31 (a court "should be hesitant to substitute its own judgment for that of [experienced] counsel").  "[S]ettlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution."  *In re Gen. Motors Corp.  Pick-Up Truck Fuel*

*Tank Prods. Liab. Litig.*, 55 F.3d 768, 806 (3rd Cir. 1995) (citing *Cotton,* 559 F.2d at 1330).   When reviewing the fairness and adequacy of a proposed settlement, a court may consider the following factors:   (1) whether the settlement, was a product of fraud or collusion; (2) the complexity, expense, and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the factual and legal obstacles to prevailing on the merits; (5) the possible range of recovery and the certainty of damages; and (6) the respective opinions of counsel. *See, e.g., Murillo,* 921 F. Supp. at 445; *Dail*, 391 F. Supp. 2d at 1145-46.   There is a general presumption of fairness in a proposed settlement when it is negotiated at arm's length.   *Murillo,* 921 F. Supp. at 445 (citing 2 Alba Conte*, Newberg on Class Actions* § 11.41 (3rd ed. June 1995)).

### B.    The Parties' Settlement Is Fair And Reasonable

10.   The parties have reached a fair and reasonable settlement following arm's length negotiations in a case with Marvin Nebrat acting as a mediator two times, and that has been the subject of one year of litigation.   The Court should approve this settlement.

11.   All of the relevant factors strongly favor approval of the parties' settlement agreement.   The agreement was negotiated at arm's length by counsel who regularly practice in employment law matters, including the types of wage-and-hour claims asserted in this lawsuit and with the benefit of two mediations with an experienced and well-respected mediator.   The parties reached settlement after one year of litigation, which included discovery involving multiple witnesses and thousands of pages of documents and data.   Without a settlement, parties faced a complex and protracted trial involving many witnesses.   In addition to the burden of further litigation, the parties faced

the uncertainty of the outcome of a jury trial, compounded by the potential appellate review of legal issues for which the parties believe there is a lack of clear and controlling guidance.  Under these circumstances, counsel for the parties believe the settlement is both fair and reasonable.

12.   The proposed settlement is also an appropriate compromise in light of the potential damages in this case.  The parties have compromised on a range of factors that would have been at issue in the litigation, including an exemption to payment of overtime wages involving the executive and highly compensated employee exemptions, the appropriate statute of limitations, liquidated damages, the number of claimed overtime hours, and the manner of calculating the amount of overtime to be paid.  The parties' agreement reaches a reasonable resolution of these issues, while compensating the plaintiffs, including Plaintiff Tolentino, for far more than average of 50 hours per week, as alleged by the defendant.  *See Proposed Settlement Chart, attached hereto as Exhibit B*.  In doing so, it recognizes the inherent risk to both parties of litigating the issue of liability through trial and appeal, as well as the subsequent uncertainty regarding the amount of damages a jury may award.  *See, e.g., Thiebes v. Wal-Mart Stores, Inc*., No. 98-802-KI, 2004 WL 1688544 (D. Ore. July 26, 2004) (less than 25 percent of opt-in plaintiffs received overtime awards after finding of liability; [c]ompared to the number of hours sought by the plaintiffs, the jury returned a somewhat minimal award).

13.   The parties' negotiated resolution of attorneys' fees and costs is also reasonable and the parties jointly request that the Court approve the amount.  The total amount of court costs, mediation costs, and attorneys' fees, respectively, is based on the

actual costs and a reduced number of hours spent by the plaintiffs' attorneys litigating this case.   The amount is also separate from the award of damages to the plaintiffs. Therefore, the costs and attorneys' fees sought in this case, as reached in the settlement, is reasonable.

14.  In sum, the attached settlement agreement is a fair and rational compromise of the parties' positions.   The settlement makes the plaintiffs eligible for recovery of a certain amount.  Because this is precisely the type of compromise that yields "the highest hopes in exchange for certainty and resolution," *In re Gen. Motors Corp.*, 55 F.3d at 806, the Court should approve the parties' proposed settlement and dismiss the plaintiffs' claims with prejudice.

<u>**CONCLUSION**</u>

15.  For the foregoing reasons, the parties respectfully request that the Court grant the parties Joint Motion for Approval of Settlement and enter an order dismissing the claims of plaintiffs with prejudice.

Respectfully submitted,

s/Jon D. Brooks (with permission)
Jon D. Brooks
Attorney-in-Charge
Southern District ID No. 24936
Texas Bar No. 24004563
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710 (telephone)
361.885.7716 (facsimile)
jbrooks@brooksllp.com (e-mail)

**Attorney for Plaintiffs**

7

s/Scott K. Davidson_____
Scott K. Davidson
Attorney-in-Charge
Southern District ID No. 33037
Texas Bar No. 24031990
600 Travis Street, Suite 2800
Houston, Texas  77002-3095
713.226.1305 (telephone)
713.223.3717 (facsimile)
**Attorney for Defendant**

OF COUNSEL:

Bobby Bourlon
Southern District ID No. 1391
State Bar No. 24031753
THE BOURLON LAW FIRM
721 East Second Street
Alice, Texas 78332
361.664.1000 (telephone)
361.668.9531 (facsimile)
bourlonlawfirm@yahoo.com (e-mail)

BROOKS LLP
Attorneys and Counselors at Law
400 Mann Street, Suite 1001
Corpus Christi, Texas 78401
361.885.7710 (telephone)
361.885.7716 (facsimile)
www.brooksllp.com (web)
**Attorneys for Plaintiffs**

LOCKE LORD BISSELL & LIDDELL LLP
J. Michael Rose
Southern District ID No. 36797
Texas Bar No. 24041819
Megan E. Alexander
Southern District ID No. 971353
Texas Bar No. 24064802
600 Travis Street, Suite 2800
Houston, Texas  77002-3095
713.226.1305 (telephone)
713.223.3717 (facsimile)

CANALES & SIMONSON, P.C.
Hector A. Canales
Southern District ID No. 29396
Texas Bar No. 24006951
2601 Morgan Avenue
Corpus Christi, Texas  78405
361.883.0601 (telephone)
361.884.7023 (facsimile)

**Attorneys for Defendant**

## Certificate of Service

      The undersigned certifies that a true and correct copy of the foregoing document has been served on all parties of record by electronic mail from the Clerk of the Court, in accordance with the rules, on this 5th day of October 2010, as follows:

      Jon D. Brooks
      BROOKS LLP
      400 Mann Street, Suite 1001
      Corpus Christi, Texas  78401

      Bobby Bourlon
      THE BOURLON LAW FIRM
      1600 E. Main Street, Suite 227
      Alice, Texas  78332

                                s/  Scott K. Davidson
                                  Scott K. Davidson