## SETTLEMENT AGREEMENT AND GENERAL RELEASE

This Settlement Agreement and General Release (the "Agreement") is made and entered into by and between Michael Tolentino ("Tolentino"), Javier Garcia ("Garcia"), and Juan Pacheco ("Pacheco") (Tolentino, Garcia and Pacheco hereinafter are referred to collectively as "Representative Plaintiffs"), individually and on behalf of a class of nine (9) additional opt-in plaintiffs (collectively, "Plaintiffs") and C&J Spec-Rent Services, Inc. ("C&J");

**WHEREAS**, on February 9, 2010, Representative Plaintiffs filed a Second Amended Complaint against C&J in the United States District Court for the Southern District of Texas, Corpus Christi Division, styled *Michael Tolentino, Juan Pacheco, Javier Garcia, Individually, and on behalf of all other similarly situated v. C&J Spec-Rent Services*, Civil Action No. 2:09-cv-326 (the "Lawsuit"), alleging overtime violations of Fair Labor Standards Act and purporting to represent a class of similarly situated employees;

**WHEREAS**, on March 4, 2010, Representative Plaintiffs filed an Opposed Motion for Notice to Potential Class Members; and

**WHEREAS**, on or about May 26, 2010, the Court granted in part and denied in part Representative Plaintiffs' Opposed Motion for Notice to Potential Class Members and conditionally certified a class of "all persons employed by Defendant in 'operator' positions in the coil tubing division at Defendant's Robstown and Marshall, Texas facilities between three years prior to May 26, 2010, and October 31, 2008;" and

**WHEREAS**, in June and July 2010, nine additional plaintiffs, Bobby Woodall ("Woodall"), Phillip Glover ("Glover"), Allen Walker, Jr. ("Walker"), Travis Gray ("Gray"), John Newsome ("Newsome"), Erik Burns ("Burns"), Ryan McNeal ("McNeal"), David Villagran ("Villagran") and Shawn Avery ("Avery") opted into the Lawsuit; and

**WHEREAS**, the opt-in period ended on July 23, 2010; and

**WHEREAS**, the parties have concluded that it is in their mutual best interests to negotiate a settlement and compromise of the disputed issues without admitting any liability to each other of any kind or nature whatsoever; and

**WHEREAS**, as a result of such negotiations, the undersigned parties have each determined independently, and after consultation with counsel of their respective choice, that it is desirable and beneficial for each of them to settle, compromise and resolve all claims and disputes therein in the manner and on the terms and conditions set forth herein.

**NOW, THEREFORE,** for good and valuable consideration, the receipt and sufficiency of which is hereby expressly acknowledged, the undersigned Representative Plaintiffs and C&J agree as follows:

1.  **SETTLEMENT PAYMENTS**.  C&J agrees to pay the total gross settlement amount of One Hundred One Thousand Nine Hundred Thirty Dollars and 40



**EXHIBIT**
*A*

Cents ($101,930.40) to Plaintiffs[1] and Ninety-Eight Thousand Sixty-Nine Dollars and 60 Cents ($98,069.60) to their attorneys ("Settlement Payments") as full settlement of all claims in the Lawsuit (including but not limited to all overtime wages, liquidated damages, attorneys' fees and costs), and as consideration for the other promises made by Representative Plaintiffs in this Agreement. C&J will pay the Settlement Payments in the manner specified below:

a.  C&J will pay, in one check made payable to Michael Tolentino, the amount of $24,324.30, less applicable withholdings. This check will be mailed to BROOKS LLP within ten (10) days following the later of: (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement. C&J will send Tolentino a W-2 for this payment in January 2011.

b.  C&J will pay, in one check made payable to Javier Garcia, the amount of $18,532.80, less applicable withholdings. This check will be mailed to BROOKS LLP within ten (10) days following the later of: (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement. C&J will send Garcia a W-2 for this payment in January 2011.

c.  C&J will pay, in one check made payable to Juan Pacheco, the amount of $9,266.40, less applicable withholdings. This check will be mailed to BROOKS LLP within ten (10) days following the later of: (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement. C&J will send Pacheco a W-2 for this payment in January 2011.

d.  C&J will pay, in one check made payable to Bobby Woodall, the amount of $13,899.60, less applicable withholdings. This check will be mailed to BROOKS LLP within ten (10) days following the later of: (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement. C&J will send Woodall a W-2 for this payment in January 2011.

e.  C&J will pay, in one check made payable to Phillip Glover, the amount of $3,474.90, less applicable withholdings. This check will be mailed to BROOKS LLP within ten (10) days following the later of: (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement. C&J will send Glover a W-2 for this payment in January 2011.

---

[1] *See* Exhibit 1, attached and adopted and incorporated herein by reference.

f.   C&J will pay, in one check made payable to Allen Walker, Jr., the amount of $1,158.30, less applicable withholdings.  This check will be mailed to BROOKS LLP within ten (10) days following the later of:  (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement.  C&J will send Walker a W-2 for this payment in January 2011.

g.   C&J will pay, in one check made payable to Travis Gray, the amount of $2,316.60, less applicable withholdings.  This check will be mailed to BROOKS LLP within ten (10) days following the later of:  (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement.  C&J will send Gray a W-2 for this payment in January 2011.

h.   C&J will pay, in one check made payable to John Newsome, the amount of $3,474.90, less applicable withholdings.  This check will be mailed to BROOKS LLP within ten (10) days following the later of:  (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement.  C&J will send Newsome a W-2 for this payment in January 2011.

i.   C&J will pay, in one check made payable to Erik Burns, the amount of $5,791.50, less applicable withholdings.  This check will be mailed to BROOKS LLP within ten (10) days following the later of:  (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement.  C&J will send Burns a W-2 for this payment in January 2011.

j.   C&J will pay, in one check made payable to Ryan McNeal, the amount of $4,633.20, less applicable withholdings.  This check will be mailed to BROOKS LLP within ten (10) days following the later of:  (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement.  C&J will send McNeal a W-2 for this payment in January 2011.

k.   C&J will pay, in one check made payable to Shawn Avery, the amount of $15,057.90, less applicable withholdings.  This check will be mailed to BROOKS LLP within ten (10) days following the later of:  (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement.  C&J will send Avery a W-2 for this payment in January 2011.

l.   C&J will pay, in one check made payable to BROOKS, LLP, the sum of $98,069.60, for attorney's fees and all other costs and expenses.  This

check will be mailed to BROOKS, LLP within ten (10) days following the later of: (i) C&J's receipt of this Agreement executed by all Representative Plaintiffs, and (ii) the Court's approval of this Agreement. C&J will send to BROOKS, LLP an IRS Form 1099, referencing Tax Identification Number 20-2506105, for this payment in January 2011. C&J also will send to Plaintiffs each an IRS Form 1099 for this payment in January 2011, which will be allocated proportionally among the Plaintiffs.

m.   The parties stipulate and agree that Plaintiff David Villagran commenced employment with C&J on October 6, 2008, at a time when the pay for Villagran's position had been restructured to provide for overtime compensation. Accordingly, Villagran received proper overtime compensation for hours worked over forty per week throughout the time period he was employed by C&J. Therefore, Villagran will not receive any settlement payment in this lawsuit.

2.   **JOINT MOTION TO APPROVE SETTLEMENT AGREEMENT AND GENERAL RELEASE / STIPULATION OF DISMISSAL**. The parties agree that they will promptly file with the Court a Joint Motion to approve this Agreement and dismiss the claims of Plaintiffs with prejudice. The parties will also take such other procedural actions to obtain Court approval of this settlement and dismissal of the Plaintiffs' claims with prejudice.

3.   **RELEASE BY PLAINTIFFS**. Representative Plaintiffs, for themselves, the remaining Plaintiffs, and for all and each of their assigns, agents, attorneys, representatives, spouse, heirs, executors and administrators (hereinafter referred to collectively as the "Plaintiff Releasors"), do covenant not to sue, and do fully remise, release and forever discharge C&J and all and each of its predecessor and successor firms, parents, subsidiaries, affiliates, and all and each of its present and former officers, directors, principals, members, partners, shareholders, employees, insurers, plan administrators, attorneys and agents, and all and each of its respective assigns, agents, representatives, spouses, heirs, executors and administrators (hereinafter referred to as the "C&J Releasees"), of and from any and all actions, causes of actions, suits, damages, judgments, claims and demands whatsoever related to Section 16(b) of the Fair Labor Standards Act. Plaintiffs represent and warrant that they have been paid in full all overtime wages, liquidated damages, attorneys' fees, and costs owed to them by C&J under the Fair Labor Standards Act through the Settlement Payments and that Plaintiffs are not due any additional compensation from C&J under the Fair Labor Standards Act.

4.   **NON-ADMISSION OF LIABILITY**. The parties enter into this Agreement expressly disavowing fault, liability and wrongdoing, liability at all times having

been denied. Plaintiffs recognize and agree that the C&J is not admitting to, and specifically denies, any unlawful or wrongful conduct in connection with the allegations in the Lawsuit or otherwise. Further, this Agreement or settlement is not evidence of any violation of or noncompliance with any statute or law by C&J. This Agreement is made to avoid continued or future disputes and controversies that Plaintiffs and C&J may have with each other, to provide peace of mind to all parties, and to eliminate and forego the nuisance of litigation and the financial costs of such litigation.

5.   **NO ORAL WAIVER**. No breach of any provision hereof can be waived by any undersigned party unless such waiver is in writing. Waiver of any one breach by an undersigned party will not be deemed to be a waiver of any other breach of the same or any other provision hereof.

6.   **VOLUNTARY AGREEMENT**. Each of the undersigned parties, including Representative Plaintiffs on behalf of the remaining Plaintiffs, have been represented or have been given the opportunity to be represented by counsel of his/her/its choice in connection with the negotiation and execution of this Agreement. Each has relied solely upon his/her/its own judgment, belief and knowledge, and/or the advice and recommendation of his/her/its own independently selected counsel, concerning the nature, extent and duration of his/her/its rights and claims, and that he/she/it has not been influenced to any extent whatsoever in executing this document, or the exhibits hereto, by any representations or statements except those expressly contained or referred to herein. Each party executes this Agreement voluntarily and of his/her/its own free will, without coercion or duress to do so.

7.   **GOVERNING LAW**. This Agreement will be governed by the substantive laws of the State of Texas without regard to conflicts of law principles.

8.   **ENTIRE AGREEMENT**. This Agreement constitutes the entire understanding and agreement between the parties with respect to the subject matter covered by this Agreement. No other promises or agreements between Plaintiffs and C&J shall be binding unless they are in writing and signed by Plaintiffs and C&J. Plaintiffs further warrant that they are not relying on any representations, oral or written, not contained in this Agreement.

9.   **APPROVAL BY ALL REPRESENTATIVE PLAINTIFFS AND COURT APPROVAL REQUIRED**. The parties understand and acknowledge that in order for this Agreement to become binding on the parties, it must be executed by all of the Representative Plaintiffs and the executed copies must be immediately provided to counsel for C&J for filing with the Court. The parties agree that this Agreement was drafted jointly by all parties and shall not be construed against any party as the drafter or primary drafter of the Agreement. The parties further

understand and acknowledge that in order for this Agreement to become binding on the parties, it must be approved by the United States District Court for the Southern District of Texas, Honorable Janis Graham Jack.  The parties agree to take all reasonable and necessary steps to seek approval of their Agreement by the Court.  In the event the Court does not approve of this Agreement, the Agreement will be null and void.

10.   **EXECUTION**.  This Agreement may be executed in counterparts, each of which will be deemed an original and shall be deemed duly executed upon the signing and notarization of the counterparts by the parties.

Agreed to and executed on this ___5___ day of _October_, 2010.

_Michael Tolentino_
Michael Tolentino

**STATE OF TEXAS**                §
                                  §
**COUNTY OF** _Nueces_            §

    **BEFORE ME**, the undersigned authority, on this day personally appeared Michael Tolentino, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

    **GIVEN UNDER MY HAND AND SEAL OF OFFICE** this ___5___ day of _October_, 2010.

[SEAL]

Notary Public - State of Texas
Commission Expires: _May 09 2013_

[SEAL]

_____

Notary Public - State of Texas
Commission Expires: _____


Agreed to and executed on this _____ day of _____, 2010.

_____
Javier Garcia


STATE OF TEXAS                              §
                                           §
COUNTY OF *Jim Wells*                      §

BEFORE ME, the undersigned authority, on this day personally appeared Javier Garcia, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this *4* day of *October*, 2010.

[SEAL]

_____
Notary Public - State of Texas
Commission Expires: _____*7-26-12*_____

LINDA KIRCHOFF
Notary Public, State of Texas
My Commission Expires 07-26-2012

HOU:0022339/00003:1484120v1

Agreed to and executed on this __4__ day of _OCTOBER_, 2010.

_____
Juan Pacheco

STATE OF TEXAS                          §
                                        §
COUNTY OF _San Patricio_                §

    BEFORE ME, the undersigned authority, on this day personally appeared Juan Pacheco, known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

    GIVEN UNDER MY HAND AND SEAL OF OFFICE this __4th__ day of _October_, 2009.

[SEAL]

IRMA R VILLARREAL
My Commission Expires
January 29, 2014

_____
Notary Public - State of Texas
Commission Expires: _1·29·2014_

Agreed to and executed on this 1ˢᵗ day of ___October___, 2010.

C&J Spec-Rent Services, Inc.

By: _____
Randy McMullen
Chief Financial Officer

STATE OF TEXAS          §
                        §
COUNTY OF HARRIS        §

BEFORE ME, the undersigned authority, on this day personally appeared Randy McMullen, the Chief Financial Officer of C&J Spec-Rent Services, Inc., known to me to be the person whose name is subscribed to the foregoing instrument and acknowledged to me that he executed the same for the purpose and consideration therein expressed.

GIVEN UNDER MY HAND AND SEAL OF OFFICE this ___1___ day of ___Oct.___, 2010.

[SEAL]

_____
Notary Public - State of Texas
Commission Expires: __July 7, 2013__

IRENE RODRIGUEZ
Notary Public, State of Texas
My Commission Expires
July 07, 2013

**EXHIBIT**

tabbies®

_1_

# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| MICHAEL TOLENTINO, JUAN PACHECO, JAVIER GARCIA, INDIVIDUALLY, AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED | § § § § § § § | |
| | § | **Civil Action No.  2:09-cv-326** |
| VS. | § | |
| | § | **JURY TRIAL DEMANDED** |
| | § | |
| C & J SPEC-RENT SERVICES, INC. | § | **COLLECTIVE ACTION** |
| | § | **PURSUANT TO 29 U.S.C. 216(b)** |

## COMPENSATION TO PLAINTIFFS UNDER SETTLEMENT AGREEMENT

| Plaintiffs | Months' Eligibility | Unpaid OT |
|---|---|---|
| Michael Tolentino | 21 | $24,324.30 |
| Javier Garcia | 16 | $18,532.80 |
| Juan Pacheco | 8 | $9,266.40 |
| Bobby Woodall | 12 | $13,899.60 |
| Ryan McNeal | 4 | $4,633.20 |
| Phillip Glover | 3 | $3,474.90 |
| Travis Gray | 2 | $2,316.60 |
| John Newsome | 3 | $3,474.90 |
| Erik Burns | 5 | $5,791.50 |
| Allen Walker, Jr. | 1 | $1,158.30 |
| Shawn Avery | 13 | $15,057.90 |

| Plaintiffs | Months' Eligibility | Unpaid OT |
|---|---|---|
| David Villagran | 0 | $0.00 |
| **Grand Total** | | **$101,930.40** |

Months' eligibility was based on the total number of months' employment by each plaintiff, based on the defendant's employment records, and going back a maximum of 3 years from the date each plaintiff joined the suit, pursuant to the Court's ruling with respect to limitations.  (Dkt #31).

Unpaid overtime compensation was based on a negotiated settlement agreement.  To reach the number, an average hourly wage of $20 per hour was given to each plaintiff, which is a reasonable hourly rate in the industry.   This resulted in an overtime rate of $30 per hour.  Based on the Court's ruling with respect to calculation of damages (Dkt #47), each plaintiffs' unpaid OT was therefore $10 per hour.   Each plaintiff was then compensated based on a compromise of an average 66.73[1] hours worked per week, or $10 per hour multiplied by 26.73 OT hours worked per week.  This results in $1,158.30 per month in damages for unpaid OT to each plaintiff, which was then multiplied by the total number of months' employment for each plaintiff.

Though Plaintiff David Villagran filed a consent to join the suit, his employment records show that he began his employment with the defendant after the defendant changed its wage policy in October 2008 and was paid, at all times, an hourly wage with overtime pay.  (Dkt. #31).   He is therefore not eligible for recovery of any damages in this suit.

---

[1] It was the plaintiffs' position that each plaintiff worked an average of about 85 hours per week.  This is based largely on deposition testimony from the plaintiffs.  The defendant's position, based on the DOT logs, is that each plaintiff worked an average of about 50 hours per week.